UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- )
IN RE:                                            ) Chapter 11
                                                  )
The Carlisle Apartments, L.P.,                    ) Case No. 10-16805 (SMB)
                                                  )
           Debtor.                                )
------------------------------------------------- )

**FINAL ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT LIENS AND PROVIDE SECURITY AND OTHER RELIEF TO NXT CAPITAL, LLC**

This matter came before this Court on the motion (the "Motion") of The Carlisle Apartments, L.P. ("Debtor") requesting that this Court enter an order authorizing Debtor to approve a settlement, and, in order to implement the settlement, to: (a) use certain Cash Collateral; (b) incur Postpetition Debt; (c) grant liens and other relief to NXT Capital LLC, as the lender under the Postpetition Credit Agreement ("Postpetition Lender"); and (d) use the proceeds of the Postpetition Debt to satisfy certain payments Debtor is obligated to make pursuant to the terms of the "Transaction" (as defined in Debtor's Motion). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in the Motion or on Exhibit A attached hereto and by this reference made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable immediately upon both: (i) this Order; and (ii) the order entered by the Court approving the "Settlement" (as defined in the Debtor's Motion) and the Transaction, being final and non-appealable orders.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 105, 362, 363 and 364 and Fed. R. Bankr. P. 4001(c) and (d) and 9019(a), and objections, if any,

having been withdrawn, resolved or overruled by the Court, **THE PORTIONS OF THE MOTION DEALING WITH FINANCING ARE HEREBY GRANTED,[1] AND THE COURT HEREBY FINDS THAT:**

      A.      On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

      B.      The Court has jurisdiction over this Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

      C.      No Committee has been appointed in this Case.

      D.      Debtor needs to use Cash Collateral and incur Postpetition Debt in accordance with the terms of this Order to implement a highly favorable settlement with its existing secured lender while minimizing disruption to its business operations. Entry of this Order will also consummate the Transaction and enhance the possibility of a successful reorganization.

      E.      Debtor is unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the Transaction and operation of its business. Except as provided below, Debtor is unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Lender.

      F.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

---

[1] This Court has entered a separate order granting the portions of the Motion dealing with the Settlement. As a result, the Motion is granted in its entirety.

G. The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

H. Compass Bank is adequately protected as a result of financing proceeds being wired directly to Compass Bank from either the Lender or Lender's title company in an amount sufficient to pay the amounts required by the Transaction.

I. Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Postpetition Lender's consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

J. In accordance with Local Rule 4001-2, extraordinary circumstances exist to grant the highlighted provisions of this Order.

K. The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c), 9014 and 9019(a) and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE PORTIONS OF THE MOTION DEALING WITH FINANCING ARE GRANTED, AND THAT:**

1. <u>Authorization to Use Cash Collateral</u>. Debtor is authorized to use Cash Collateral in the ordinary course of its business, in accordance with and subject to the terms and provisions of this Order and the Postpetition Documents, to the extent required to pay when due ordinary course operating expenses, the Carveout, and the Postpetition Charges.

3

NEWYORK/141725.3

2. Procedure for Use of Cash Collateral.

(a) Delivery of Cash Collateral to Postpetition Lender. Debtor shall deliver all Cash Collateral now or hereafter in its possession or control to Postpetition Lender in a manner satisfactory to Postpetition Lender (or, if permitted by Postpetition Lender, deposit such Cash Collateral into the Blocked Account) promptly upon receipt thereof.

(b) Cash Collateral in Postpetition Lender's Possession. Postpetition Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Postpetition Lender's possession or control which constitute Postpetition Collateral or proceeds thereof.

(c) Application of Cash Collateral. Postpetition Lender, at its election, is authorized to apply all Cash Collateral now or hereafter in Postpetition Lender's possession or control as follows: (1) first, to payment of Postpetition Debt consisting of Postpetition Charges in accordance with the Postpetition Credit Agreement; and (2) second, to payment of other Postpetition Debt in accordance with the Postpetition Credit Agreement. All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee. So long as the Postpetition Charges and Postpetition Debt are current, the Debtor may use Cash Collateral in the ordinary course of its business, in accordance with and subject to the terms and provisions of this Order and the Postpetition Documents.

(d) Prohibition Against Use of Cash Collateral. Except as provided for in this Order, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Postpetition Lender has consented to such order.

3. Authorization To Incur Postpetition Debt.

(a) Postpetition Documents. Debtor is hereby authorized and has agreed to: (1) execute the Postpetition Documents, in substantially the form presented to the Court but with any non-material changes deemed appropriate, including all documents that Postpetition Lender finds reasonably necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform its obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the portion of the Motion dealing with financing, the Postpetition Documents, and this Order, this Order shall govern and control.

(b) Permitted Uses of Postpetition Debt. Debtor is authorized and has agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order and the Postpetition Documents, and (2) to pay (i) any amounts due pursuant to the Transaction, (ii) the Postpetition Charges, and (iii) the expenses of exiting chapter 11, including professional fees. In order to adequately protect the Bank, the Postpetition Lender is hereby directed that the portion of the Postpetition Debt required to consummate the Transaction between the Bank and the Debtor described in the Motion shall be wired directly from the Postpetition Lender or any title company holding Postpetition Lender's money in escrow directly to the Bank on the Closing Date. If Postpetition Lender advances monies to Debtor and Debtor uses such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

5

(c) <u>Additional Terms of Postpetition Debt</u>. The Debtor is hereby authorized to incur the Postpetition Debt on the following terms, among others:

(i) <u>Maximum Amount</u>. The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the Maximum Postpetition Debt Amount (not including interest, any protective advances made by Postpetition Lender or any other obligations under the Postpetition Documents that are capitalized to the principal amount of Postpetition Debt in accordance with the Postpetition Documents).

(ii) <u>Interest</u>. The Postpetition Debt shall bear an interest rate (the "Interest Rate") equal to a floating rate per annum equal to the aggregate of four percent (4.00%) plus the Base Rate, but in no event shall the Interest Rate be lower than six and three quarters percent (6.75%); <u>provided</u>, <u>however</u>, that so long as the Debtor remains in bankruptcy, the Interest Rate shall be seven and one-half percent (7.50%).

(iii) <u>Application Fee</u>. A $15,000 application fee, plus a $99,100 good faith deposit, is required with submission of the loan application. RECAP has advanced these sums as an equity contribution to Debtor, and the Debtor is hereby authorized to account for it as such.

(iv) <u>Loan Fee</u>. One and a quarter percent (1.25%) of the Maximum Amount.

(v) <u>Prepayment</u>. The Postpetition Debt may be prepaid in full or in part at any time, subject to payment of the Exit Fee and the Minimum Interest Recovery.

(vi) <u>Exit Fee</u>.

a. Upon payment of the Postpetition Debt in full, whether at Maturity or on any other date (including upon the acceleration of the Postpetition Debt by Postpetition Lender as provided in the Postpetition Documents), Debtor will pay to Postpetition Lender the Exit Fee <u>plus</u> the Minimum Interest Recovery. Upon any partial repayment of the Postpetition Debt, Debtor will pay to Postpetition Lender the pro rata portion of the Exit Fee allocable to the amount of Postpetition Debt being repaid, and upon final payment in full of the Postpetition Debt, the Exit Fee due Postpetition Lender shall be reduced by any portions of the Exit Fee previously received by Postpetition Lender and applied toward the Exit Fee as a result of any previous partial repayment of Postpetition Debt.

b. The Exit Fee is equal to $427,500; <u>provided however</u>, that in the event the Debtor has not exited from bankruptcy within 90 days from the Closing Date without triggering a Termination Date, the Exit Fee shall be $570,000; <u>provided further</u>, that in the event the Debtor has not exited from bankruptcy without triggering a Termination Date within 150 days from the Closing Date, the Exit Fee shall be $712,500.

(vii) <u>Minimum Interest Recovery</u>. The amount, if any, by which One Million Nine Hundred Twenty-Three Thousand Seven Hundred Fifty and No/100ths Dollars ($1,923,750.00) exceeds the amount of interest actually paid by Debtor to Postpetition Lender prior to repayment of the Postpetition Debt in full or acceleration of the Postpetition Debt.

(viii) <u>Maturity</u>. Three years from the Closing Date, subject to an optional one year extension; <u>provided</u>, <u>that</u>, Postpetition Debt shall mature and be due and payable in full by Debtor on the Termination Date.

(d) <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code. In addition, Postpetition Lender is hereby granted the Postpetition Liens, to secure the Postpetition Debt. The Postpetition Liens: (1) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to the Carveouts described herein) without any further action by Debtor or Postpetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (2) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; (4) shall not be subject to Code § 510(c); and (5) shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Postpetition Collateral located on such leased premises. Notwithstanding the foregoing, Debtor shall execute and deliver to Postpetition Lender such financing statements, mortgages, instruments and other documents as Postpetition Lender may request from time to time, and any such documents filed by Postpetition Lender shall be deemed filed as of the Filing Date.

(e) <u>Prohibition Against Additional Debt</u>. Debtor will not incur or seek to incur debt secured by a lien which is equal to or superior to the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364, Postpetition Lender has consented to such order.

4. <u>Termination Date; Rights and Remedies</u>.

(a) <u>Effect of Termination Date</u>. Unless extended by the Court upon the written agreement of Postpetition Lender, upon the Termination Date without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Lender's election: (i) the Postpetition Debt shall be immediately due and payable, (ii) Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Postpetition Debt in accordance with Paragraph 2(c) of this Order, and (iii) Postpetition Lender shall be entitled to setoff any cash in Postpetition Lender's possession or control and apply such cash to the Postpetition Debt in accordance with Paragraph 2(c) of this Order.

(b) <u>Rights and Remedies</u>. On the seventh (7th) day after the Termination Date, at Postpetition Lender's election without further order of the Court: (1) Postpetition Lender shall have automatic and immediate relief from the automatic stay with respect to the Postpetition Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Postpetition Documents and applicable nonbankruptcy law; and (2) Debtor shall surrender the Postpetition Collateral and otherwise cooperate with Postpetition Lender in the exercise of its rights and remedies under the Postpetition Documents and applicable

nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents or consent to the appointment of one or more receivers to sell, lease or otherwise dispose of the Postpetition Collateral upon the request and subject to terms and conditions acceptable to Postpetition Lender. Notwithstanding the foregoing, during the seven (7) day period following the Termination Date, Debtor may seek an order of this Court determining, <u>inter alia</u>, that an Event of Default alleged to have given rise to the Termination Date did not occur; <u>provided</u>, <u>however</u>, that during such seven (7) day period, Postpetition Lender shall have no obligation to advance Postpetition Debt to Debtor.

5. <u>Carveouts</u>.

(a) <u>Carveout for Professionals</u>. There shall be a Carveout for the Carveout Professionals. The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) $434,750.00 and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Closing Date and ending on the earlier of (y) the Termination Date or (z) the date the Case is either dismissed or a plan or reorganization is consummated; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional after the Closing Date; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Postpetition Lender) before such payments are made from proceeds of the Postpetition Debt or the Postpetition Collateral; <u>provided</u>, <u>however</u>, that Debtor shall deposit cash in an amount equal to $434,750.00 and Postpetition Lender shall segregate such funds, for the purpose of funding payments of fees and expenses to the Carveout Professionals when authorized by the Court; <u>provided further</u>, that any funds so segregated, upon entry of an order dismissing the Case or upon the occurrence of the effective date under a plan of

reorganization confirmed in the Case, and after all payments to Carveout Professionals have been made, will be returned by Postpetition Lender to Debtor, so long as Debtor is not in default of any of its obligations under this Order or the Postpetition Documents.  Upon the Termination Date, and notwithstanding anything herein to the contrary, Postpetition Lender shall provide Postpetition Debt to the Debtor in an amount equal to the Carveout amount for each Carveout Professional determined in clause (1) above, which Postpetition Debt shall be used by the Debtor for the sole purpose of funding the Carveout Professionals after the Termination Date.  Except as set forth in the preceding sentence, Postpetition Lender shall have no obligation to fund any fees or expenses of Carveout Professionals.

(b) <u>Chapter 7 Trustee Carveout</u>.  There shall be a Carveout for a Chapter 7 Trustee.  The Carveout with respect to a Chapter 7 Trustee is: (1) $30,000; and (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Chapter 7 Trustee after the Closing Date; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Postpetition Lender) before such payments are made from proceeds of the Postpetition Debt or the Postpetition Collateral; <u>provided</u>, <u>however</u>, that Debtor shall deposit cash in an amount equal to $30,000 and Postpetition Lender shall segregate such funds, for the purpose of funding payments of fees and expenses to the Chapter 7 Trustee when authorized by the Court; <u>provided further</u>, that any funds so segregated, upon entry of an order dismissing the Case or upon the occurrence of the effective date under a plan of reorganization confirmed in the Case, will be returned by Postpetition Lender to Debtor, so long as Debtor is not in default of any of its obligations under this Order or the Postpetition Documents.

(c) U.S. Trustee Carveout. There shall be a Carveout for all fees which become due and owing to the U.S. Trustee. The Carveout with respect to the U.S. Trustee Fees shall be paid out of any prepetition retainer or property of the estate before such payments are made from proceeds of the Postpetition Debt or the Postpetition Collateral.

(d) Carveout Usage. No portion of the Carveout and no Postpetition Debt or Postpetition Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtor, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Postpetition Lender's interests in the Postpetition Collateral, including (1) preventing, hindering or delaying Postpetition Lender's enforcement or realization upon any of the Postpetition Collateral once an Event of Default has occurred unless the Court determines that either no Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Postpetition Collateral without Postpetition Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Postpetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Postpetition Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Postpetition Lender; provided, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Postpetition Lender.

(e) Carveout Procedure. The Postpetition Lender will be added as a notice party to all orders previously entered concerning professional fees and on all professional fee applications. Nothing herein shall be construed as consent by Postpetition Lender to the

11

allowance of any fees or expenses of the Carveout Professionals or any Chapter 7 Trustee, or shall affect the right of Postpetition Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Postpetition Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional or Chapter 7 Trustee, that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional.

6. <u>No Surcharge</u>. In the exercise of its business judgment, Debtor (or any Trustee) agrees that there shall be no surcharge of the Postpetition Collateral for any purpose, unless agreed to by Postpetition Lender. Further, Debtor represents that the Cash Collateral the Debtor projects it will generate will be sufficient to pay all expenses that are reasonable and necessary for the operation of its business and the preservation of the Postpetition Collateral through the end of the Case, and therefore includes all items potentially chargeable to Postpetition Lender under Code § 506(c). Therefore, the Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Postpetition Lender or the Postpetition Collateral in the Case or in any subsequent case under the Code that Debtor is subject to at any time. In reliance on the foregoing, Postpetition Lender has agreed to the entry of this Order.

7. <u>Right to Credit Bid</u>. In the Case or in any subsequent case under the Code that Debtor is subject to at any time, in connection with the sale or other disposition of all or any portion of the Postpetition Collateral, whether under Code § 363, Code § 1129 or otherwise,

12

pursuant to Code § 363(k), Postpetition Lender shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Postpetition Collateral.  This provision shall not in any way abrogate, derogate, limit or otherwise impact any of Postpetition Lender's rights or remedies under state law or otherwise, including, without limitation, Postpetition Lender's right to credit bid in any foreclosure action or similar proceeding.

8. <u>Plan</u>.  Debtor shall not seek entry of an order confirming a plan in this Case unless such order is in form and substance acceptable to Postpetition Lender and provides for the assumption of the Postpetition Debt on terms and conditions contained in the Loan Documents.

9. <u>Application of Sale Proceeds</u>.  All proceeds from sales or other dispositions of all or any portion of the Postpetition Collateral other than in the ordinary course shall be remitted to Postpetition Lender for application in accordance with Paragraph 2(c) of this Order.

10. <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtor hereby waives its rights:  (a) to return any of the Postpetition Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

11. <u>Indemnification</u>.  Debtor shall indemnify and hold harmless the Postpetition Lender in accordance with the Postpetition Credit Agreement.  So long as the Case is pending, any claim by Postpetition Lender to such indemnification must be submitted to and approved by the Court.

12. <u>No Marshaling</u>.  Postpetition Lender shall not be subject to the doctrine of marshaling.

13. <u>Postpetition Charges</u>.  All Postpetition Charges are hereby approved and shall be promptly paid by Debtor in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges.

14. <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Postpetition Lender to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Postpetition Lender to exercise its rights contemplated by Paragraph 4 above.

15. <u>No Waiver</u>.  Postpetition Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of the Postpetition Lender, as applicable, and directed to Debtor.  No failure of Postpetition Lender to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Postpetition Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Postpetition Lender in the exercise of any right or remedy under this Order, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Postpetition Lender of any of its rights under the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that, any of its interests in the Postpetition Collateral lack adequate protection within the

meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

16. <u>"Responsible Person."</u>  By taking any actions pursuant to this Order, Postpetition Lender shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

17. <u>Release</u>.  Without further order of this Court, upon entry of an order dismissing the Case or confirming a plan of reorganization, Postpetition Lender shall be deemed released from any and all claims and causes of action that could have been asserted or raised through the date of entry of such order under or in connection with the Postpetition Documents, the Postpetition Debt, and Postpetition Lender's course of conduct by Debtor.  Debtor is hereby authorized to memorialize such a release in a written document, but such release is effective with or without a separate written document.

18. <u>Amendments</u>.  While this Case is pending, Debtor and Postpetition Lender may enter into amendments or modifications of the Postpetition Documents without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

19. <u>Order</u>.  This Order shall take effect immediately upon execution and shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and hearing; and further provided, that Debtor shall continue to operate under the previously entered cash collateral orders in this case until the Closing Date.  If, in accordance

15

with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any lien, security interests, adequate protection or any other benefit or claim authorized hereby prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

20. <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting the Case to a case under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference of the Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court.  The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Postpetition Debt is indefeasibly paid in full in cash and discharged.  If this Case is dismissed or a plan or reorganization is confirmed, then the Loan Documents will govern the terms of the Postpetition Debt.  Effective immediately, nothing in any order dismissing the Case or confirming a plan of reorganization shall affect the priority, validity, enforceability, or effectiveness of the Postpetition Documents,

16

or any lien, security interests, benefit or claim authorized in this Order or in the Postpetition Documents or include any term or provision which would in any way result in a breach of the Postpetition Documents or any term or provision contained therein.

21. <u>Notice of Entry of Order</u>. Debtor is directed to serve a copy of this Order, within three (3) business days hereof, by first class mail, postage prepaid, on all of Debtor's secured creditors, the United States Trustee, and all parties requesting notice pursuant to F.R.B.P. 4002.

22. <u>Previous Cash Collateral Orders</u>. Upon the occurrence of the Closing Date, this Cash Collateral Order will supersede and replace all previously existing cash collateral orders entered in this Case.

    /s/ *Stuart M. Bernstein*
Hon. Stuart M. Bernstein
United States Bankruptcy Judge

*Dated: July 11, 2011*

# EXHIBIT A
# DEFINED TERMS

1. **Blocked Account**. Account No. [_____] at [_____], subject to a control agreement between Debtor, Postpetition Lender and depository bank, which agreement shall give Postpetition Lender control of the account and all products and proceeds therein in accordance with Article 9 of the applicable Uniform Commercial Code.

2. **Carveout**. Amounts carved out from Postpetition Lender's liens in an amount collectively equal to: (a) all fees required to be paid to the Office of the United States Trustee (the "U.S. Trustee") pursuant to 28 U.S.C. § 1930(a); (b) the allowed fees and expenses of a Chapter 7 Trustee, up to a maximum of $30,000; and (c) with respect to each Carveout Professional, the allowed fees and disbursements as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, not to exceed the aggregate amount set forth in Paragraph 5(a) of this Order.

3. **Carveout Professionals**. Squire Sanders & Dempsey (US) LLP and Gordian Group, Inc.

4. **Case**. The chapter 11 case or any superseding chapter 7 case of Debtor.

5. **Cash Collateral**. All "cash collateral," as that term is defined in Code § 363(a), in which Postpetition Lender has an interest, all deposits subject to setoff rights in favor of Postpetition Lender, and all cash arising from the collection or other conversion to cash of the Postpetition Collateral.

6. **Chapter 7 Trustee**. A trustee appointed by the Office of the United States Trustee in the event the Case is converted to one under chapter 7 of the Bankruptcy Code.

7. **Closing Date**. The date, following the entry of this Order, on which the Postpetition Documents are executed and delivered by Debtor and the Postpetition Lender, the conditions precedent to the effectiveness of the Postpetition Credit Agreement are satisfied, and the Postpetition Debt is advanced by Postpetition Lender to Debtor.

8. **Code**. The United States Bankruptcy Code (11 U.S.C. § 101 et seq.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

9. **Committee**. Any official committee appointed to represent creditors or equity security holders in this Case pursuant to Code § 1102.

10. **Event of Default**. At Postpetition Lender's election, (a) the occurrence and continuance of any Event of Default under the Postpetition Credit Agreement or (b) Debtor's failure to comply with the covenants or perform any of its obligations in strict accordance with the terms of this Order.

11. **Filing Date**. December 27, 2010.

12. **Maximum Postpetition Debt Amount**. $28,500,000.

13. ***Obligations***.  The "Obligations", as that term is defined in the Postpetition Credit Agreement.

14. ***Postpetition Charges***.  Interest at the applicable rate of interest under the Postpetition Credit Agreement and all fees, costs, and expenses provided for in the Postpetition Credit Agreement, including those incurred by Postpetition Lender in connection with the Postpetition Debt.

15. ***Postpetition Collateral***.  All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles, all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Postpetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

16. ***Postpetition Credit Agreement***.  That certain Loan Agreement dated as of the Closing Date, by and between Debtor and Postpetition Lender as amended, modified, supplemented, replaced or refinanced from time to time.

17. ***Postpetition Debt***.  All indebtedness or obligations of Debtor to Postpetition Lender incurred on or after the Filing Date pursuant to this Order or otherwise, including all Obligations and any advances made by Postpetition Lender to pay the Carveout.

18. ***Postpetition Documents***.  The Postpetition Credit Agreement and the "Loan Documents" (as that term is defined in the Postpetition Credit Agreement).

19. ***Postpetition Liens***.  Priority Liens in the Postpetition Collateral, subject only to the Carveout.

20. ***Priority Liens***.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

21. ***Termination Date***.  At Postpetition Lender's election, the earliest to occur of:  (a) the date that is the date on which Postpetition Lender provides, via facsimile or overnight mail, written notice to counsel for Debtor, the U.S. Trustee and the twenty largest creditors of the occurrence and continuance of an Event of Default; (b) the entry of an order converting the Case to a case under chapter 7 of the Code; (c) the entry of an order confirming a plan of reorganization or liquidation, unless such order, complies with paragraph 20 herein and is otherwise in form and substance reasonably acceptable to the Postpetition Lender; (d) the closing date of a sale of all or substantially all of the Collateral pursuant to Code § 363; (e) the date on which the Postpetition Debt is indefeasibly paid in full in cash; and (f) 180 days from the Closing Date unless (i) an order dismissing the Case has been entered or (ii) the effective date under a plan of reorganization confirmed in the Case has occurred and the Termination Date has not occurred as a result of clause (c) of the definition of Termination Date.

22. ***Trustee***.  Any trustee appointed or elected in the Cases.