Sandra E. Mayerson (SEM-8119)
Peter A. Zisser (PZ-9634)
Squire, Sanders & Dempsey (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone: +1.212.872.9800
Facsimile: +1.212.872.9815

Counsel to Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| The Carlisle Apartments, L.P., | : Case No. 10-16805 (SMB) |
| | : |
| Debtor. | : |

---------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER DISMISSING DEBTOR'S CHAPTER 11 CASE**

The Carlisle Apartments, L.P. ("Debtor"), debtor and debtor-in-possession in the above-captioned case (the "Case"), hereby moves this Court for an order dismissing Debtor's chapter 11 case (the "Motion"); and in support thereof, respectfully states as follows:

**PRELIMINARY STATEMENT**

1. In December of 2010, Debtor was faced with two significant problems that threatened its existence: An internecine battle over control of Debtor, and efforts by Debtor's secured lender to foreclose on Debtor's Property. It was for these reasons that Debtor determined bankruptcy was its only option to preserve the value of its estate for all stakeholders.

2. After considerable effort, Debtor has been able to reach settlements with all its prepetition foes, and at the same time obtain sufficient exit financing to allow Debtor to exit bankruptcy, pay all its general unsecured creditors in full and put itself back into manageable

financial condition. As a result, keeping this Case in bankruptcy for the sole purpose of approval of a disclosure statement and plan does not make economic sense for Debtor, its estate or its unsecured creditors, who will be paid 100% of their legitimate claims. In fact, preparing, serving and prosecuting a disclosure statement and plan would likely cost the estate more in legal fees than the estate will need to pay out in unpaid prepetition claims. Furthermore, under the financing that is currently in place, Debtor pays a higher rate of interest, so long as, it remains in bankruptcy. For these reasons, Debtor believes that a rapid dismissal of this Case is the most beneficial course of action for Debtor, its estate and all stakeholders.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The Court has entered an order that venue is appropriate in this District.

5. The statutory bases for the relief requested herein are sections 105(a) and 1112 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

6. On December 27, 2010 (the "Petition Date"), Debtor commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

7. Debtor is continuing in possession of its properties and is operating and managing its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No trustee or statutory committee has been appointed in this Case.

**The Limited Partnership**

9. Debtor was formed on or about January 2, 2008, pursuant to that certain Limited Partnership Agreement of Debtor (the "LPA") by and among McCullough Harris, LLC, a North

Carolina limited liability company ("McCullough Harris"), RECAP XI – Fund A, L.P. ("RECAP A") and RECAP XI – Fund B, L.P. ("RECAP B" and, together with RECAP A, "RECAP"). Pursuant to the LPA, RECAP was the initial limited partner of Debtor and McCullough Harris was the initial general partner of Debtor. The purpose of Debtor was to develop and own certain real property in Charlotte, North Carolina, currently known as the University Center Apartments (the "Property").

**Loan from Compass**

10. On January 2, 2008, Debtor and Compass Bank ("Compass") entered into the Construction Loan Agreement (the "Original Loan Agreement") and related Note (the "Note"), which Note was secured by a first priority deed of trust on the Property (the "Mortgage"), whereby Compass provided a loan in the principal amount of $32,400,000 (the "Loan") to Debtor in order to finance the acquisition of the Property and to construct certain improvements thereon. Donald E. Phillips ("Phillips", and together with McCullough Harris, the "MH Parties") is a guarantor of Debtor's obligations under the Original Loan Agreement. The original Note matured in January, 2011 (the "Maturity Date").

11. On or about January 15, 2008, Debtor entered into an interest rate swap (the "Swap Obligation") with respect to the Note which was also secured by the Mortgage. All obligations whatsoever owing to Compass from Debtor under the Original Loan Agreement, the Note, the Mortgage, the Swap Obligation and any other documents related to the Property, whether secured or unsecured, are, herein, the "Compass Obligations".

**McCullough Harris**

12. On or about September 2010, without seeking RECAP's consent, McCullough Harris, on behalf of Debtor, filed a lawsuit against Compass in Florida state court. RECAP

asserted that McCullough Harris's filing of this lawsuit breached the LPA. McCullough Harris, on behalf of Debtor, also filed a *lis pendens* on the Property in Mecklenburg County, North Carolina. RECAP asserted that this act also breached the LPA. RECAP determined that these actions, among others, violated the LPA and entitled RECAP to remove McCullough Harris as general partner.

13. On or about November 12, 2010, RECAP sent notice to the MH Parties that it was converting McCullough Harris's general partnership interest in Debtor into that of a limited partner without any rights or obligations to participate in the management of Debtor and without any approval rights under the LPA, and that RECAP had appointed Carlisle GP, Inc. ("Carlisle GP") as the new general partner of Debtor.

14. The MH Parties disputed Carlisle GP's entitlement to act as general partner and commenced suit (the "North Carolina Action") in the Mecklenburg County Superior Court in Charlotte, North Carolina, encaptioned *The Carlisle Apartments, L.P. and McCullough Harris, LLC v. RECAP XI - Fund A, L.P. and RECAP XI - Fund B, L.P., Carlisle GP, Inc. and GREP Southeast, L.L.C.*, Case No. 10-cvs-23038, seeking a temporary restraining order preventing Carlisle GP from taking over as general partner. The relief sought by the MH Parties was denied by the court. RECAP asserted that the commencement of this lawsuit also violated the LPA.

15. On November 15, 2010, Carlisle GP and RECAP sought a temporary restraining order ("TRO") and preliminary injunction against McCullough Harris in the District Court for the Southern District of New York to prevent McCullough Harris from interfering with Carlisle GP's exercise of control over Debtor as its general partner.

16. On November 23, 2010, the District Court granted the TRO and ordered McCullough Harris: (a) to turn over the books, accounts, and records of Debtor to Carlisle GP

and (b) to refrain from any act of interference with the operation or management of Debtor's affairs as administered by Carlisle GP as the new general partner, or otherwise taking action inconsistent with McCullough Harris's obligations under the LPA.

17. Carlisle GP also learned that, notwithstanding the removal of McCullough Harris as general partner of Debtor on November 15, 2010, the MH Parties continued to control Debtor's bank accounts held at Compass. Although Carlisle GP timely informed Compass that it had replaced McCullough Harris as general partner and that the MH Parties were no longer authorized to act on behalf of Debtor, Debtor believed that Compass continued to allow the MH Parties to withdraw funds, without the consent or participation of Carlisle GP.

**Debtor's Decision to File Chapter 11**

18. Carlisle GP continued to attempt negotiations with Compass for an extension of the Compass Obligations. On December 22, 2010, Compass informed Carlisle GP that the Note had to be paid in full on or before the Maturity Date, and on December 23, 2010, Carlisle GP was informed by Compass that Compass intended to sell the Note if the proposed buyer could pay the agreed price by year end. As a result, Compass was not interested in further discussion about restructuring the Compass Obligations.

19. Faced with: (i) the real threat that the MH Parties could potentially drain Debtor's cash resources, (ii) the Loan coming due imminently, and (iii) no counterparty willing to negotiate, Carlisle GP and Debtor determined that filing for relief under chapter 11 of the Bankruptcy Code was the only viable option to preserve the value of the Property, prevent foreclosure, and maximize value for all stakeholders.

**Post-Petition Events**

**Settlement with the MH Parties**

20. On January 11, 2011, McCullough Harris filed the *Motion to Transfer Venue Pursuant to 28 U.S.C. §§ 1408 and 1412 and Bankruptcy Rule 1014* (Docket No. 12), seeking to transfer venue of the Case to a bankruptcy court in North Carolina.

21. After significant negotiations between the parties, on or about March 21, 2011, Debtor, RECAP and the MH Parties reached a consensual resolution of their disputes (the "MH Settlement Agreement"). The MH Settlement Agreement provided, among other things, that: (i) Carlisle GP was the sole general partner of Debtor; (ii) an affiliate of RECAP would purchase the MH Parties' interests in Debtor for $600,000; (iii) the MH Parties would withdraw or terminate the North Carolina Action; (iv) RECAP and Carlisle GP would withdraw or terminate actions against the MH Parties that were ongoing in New York; (v) McCullough Harris would withdraw its motion for change of venue and the parties would stipulate that venue should remain in the Southern District of New York; (vi) the MH Parties would irrevocably waive all claims in the Case; (vii) McCullough Harris would certify it had transferred all of Debtor's books, records, information on construction defects, marketing materials and website to the Debtor and fully cooperate with additional reasonable related requests and inquiries; (viii) mutual releases would be exchanged, including a release of all of the MH Parties' claims against Debtor's estate; and (ix) Debtor and McCullough Harris would be withdrawn as plaintiffs in a lawsuit against Compass brought by affiliates of McCullough Harris.

22. The MH Settlement Agreement was subsequently approved by this Court, and on May 13, 2011, the settlement embodied in the MH Settlement Agreement was consummated.

With the MH Parties out of the picture and Carlisle G.P., Inc., firmly ensconced as general partner, the way was clear to negotiate with Compass.

**Settlement with Compass and Post-Petition Exit Financing**

23. In the time between the Petition date and May 13, 2011, Debtor's efforts and attention was directed towards reaching a consensual settlement with the MH Parties. Once that distraction was resolved, Debtor turned towards its liabilities to Compass. Debtor believed that to maximize value, it needed a relatively long term loan in order to stabilize the Property. It was frustrated in its negotiations with Compass, because Compass would not restructure its loan beyond two years and would not agree to any discount. In a dramatic breakthrough in negotiations, Compass offered to significantly discount the Compass Obligations if Debtor would pay it outright and not take the time to confirm a plan of reorganization. This discount and the flexibility to obtain new, longer term financing in a lower principal amount was only available if Compass was paid the discounted amount quickly outside a plan of reorganization. Debtor determined this option was in the best interests of Debtor and its stakeholders and immediately began looking for new financing which would permit Debtor to repay Compass and, subsequently, to exit chapter 11.

24. Debtor, RECAP and Compass subsequently entered into a settlement (the "Compass Settlement Agreement"). The Compass Settlement Agreement provided, among other things, that (i) Compass would extinguish all of the Compass Obligations for a discounted payment of approximately $30 million, (ii) Debtor, RECAP and Compass would exchange mutual releases, and (iii) if Debtor could not close on new financing and pay off Compass at the discounted amount within forty-five (45) days of filing a motion to approve the settlement, then a plan of reorganization was already pre-negotiated and must be filed which extended the Note for two years, required a $5 million paydown, and had no discount.

25. Debtor quickly filed a motion seeking Bankruptcy Court approval of the Compass Settlement Agreement.

26. Simultaneously, Debtor negotiated a loan agreement with NXT Capital LLC ("NXT"), pursuant to which NXT would provide debtor-in-possession financing which would stay in place as exit financing (the "NXT Financing") to be used by Debtor to satisfy the discounted Compass Obligations and exit from bankruptcy. The relevant terms of the NXT Financing include, *inter alia*: (i) Debtor would borrow $28.5 million (the "Loan"); (ii) the Loan would be secured by a perfected first lien on all of Debtor's real and personal property, including the Property, which lien would prime Compass; and (iii) RECAP would guarantee the Loan.

27. Other significant provisions of the NXT Financing include:

   (a) No future orders of the Bankruptcy Court can affect the extent, validity or priority of the NXT liens;

   (b) Debtor must exit bankruptcy within 180 days;

   (c) Debtor pays a higher rate of interest so long as it is in bankruptcy, and the fee to exit the NXT Financing is increased the longer Debtor remains in bankruptcy; and

   (d) If Debtor exits bankruptcy other than through a plan of reorganization, all legitimate pre-petition debts must be paid in full within thirty days.

28. This Court held a hearing on July 7, 2011, to consider the Compass Settlement Agreement and the NXT Financing. An initial order approving the settlement was entered in the Case on July 7, 2011, with an additional order concerning terms of the NXT Financing being entered on or about July 11, 2011. Both orders have since become final, non-appealable orders.

29. On July 26, 2011, Debtor closed on the NXT Financing and concomitant discounted pay off to Compass Bank. RECAP was required to make an equity contribution in excess of $3 million to effectuate the closing of the NXT Financing and Compass pay-off.

30. As a result of the closing, Debtor's exit financing is already in place, but becomes noticeably less expensive as soon as Debtor exits bankruptcy. Debtor cannot affect or alter any of the terms of the NXT Financing in a plan of reorganization, and the Court has already entered an order to this effect. Furthermore, the NXT Financing will be in default if Debtor exits chapter 11 and does not pay its legitimate pre-petition obligations in full within thirty (30) days. All of these considerations militate toward dismissing the Case rather than taking the time to propose and confirm a plan. Indeed, all creditors are likely to be paid sooner if the case is dismissed, and Debtor will have more liquidity the sooner the case is dismissed.

31. Debtor estimates it has less than Fifty thousand dollars ($50,000) in pre-petition unsecured claims. The cost of drafting and prosecuting a plan would be significant in comparison to the small class of claims to be dealt with in a plan. Such claims are fully protected by the provision in the NXT Financing that the Debtor is in default if its pre-petition claims are not paid in full within thirty (30) days of exiting from bankruptcy.

32. The current equity holders put well over $3 million of new value into Debtor post-petition in order to effectuate the settlements with Compass and the MH Parties. Under such circumstances, there is nothing inequitable about dismissing the Case and permitting equity to stay in place.

## RELIEF REQUESTED AND BASIS FOR RELIEF

33. By this Motion, Debtor respectfully requests entry of an Order dismissing this Case without prejudice. This Case was never about Debtor being unable to operate, falling deeply into arrears with its vendors, taxing authorities, utilities or any of its other unsecured or priority creditors. As noted above, Debtor commenced this Case to preserve the value of the Property, prevent foreclosure, and maximize value for all stakeholders in the face of (a) a general

partner consistently and continually violating the terms of Debtor's partnership agreement, putting Debtor at significant risk, and (b) a lender seeking to foreclose on Debtor's real property.

34. With the consummation of the MH Settlement Agreement, the Compass Settlement Agreement and obtaining new financing on viable terms through the NXT Financing, Debtor has rid itself of the wolves at the door while at the same time insuring that it is financially strong enough to exit bankruptcy without any prejudice to its creditors, who will be paid in full on exit from bankruptcy.

35. Bankruptcy Code section 1112 provides, in pertinent part, that upon request of a party in interest and after notice and a hearing, the court may dismiss a chapter 11 case "for cause" if it is in the "best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b)(1). Section 1112 also provides sixteen (16) examples of what constitutes "cause," all of which are based on some failure or malfeasance of the debtor.[1] This list, however, is not exclusive. *See In re Forum Health*, 444 B.R. 848, 855 (Bankr. N.D. Ohio 2011) ("Although the list of causes in § 1112(b)(4) includes sixteen examples, such list is non-exclusive."). Dismissal may also be appropriate when "continuation of a bankruptcy case does not serve a bankruptcy purpose." *Id.*

---

[1] Bankruptcy Code section 1112(b)(4) provides, in pertinent part, that for purposes of section 1112, the term "cause" includes: (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341 (a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition. *See* 11 U.S.C. § 1112(b)(4).

at 856; *accord In re AmeriCERT, Inc.*, 360 B.R. 398, 402 (Bankr. D.N.H. 2007) ("The list is not exhaustive, and a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose.").

36. In *Forum Health*, the court held that where a debtor has the resources to pay all of its creditors in full outside the protection of the Bankruptcy Code, that debtor no longer requires such protection and thus has established cause for dismissing its Bankruptcy case. 444 B.R. at 856 (citing *In re Manawa Implement and Serv., Inc.*, 1988 WL 1571426 (Bankr. S.D. Iowa July 11, 1998)). In *Manawa*, the court stated that:

> [S]ection 1112(b) grants the Court the power to dismiss "for cause" if in the best interest of creditors. What constitutes cause is a matter of judicial discretion to be determined on a case by case basis. In the case at bar, cause exists to dismiss because Debtor has made substantial accommodations with all creditors and is now on its way back to financial success. Further, it is in the best interest of creditors to dismiss the case and let Debtor move forward in order to begin paying back its debts.

1988 WL 1571426 at *2.

37. Like *Forum Health* and *Manawa*, Debtor has made "substantial accommodations" with Compass, its single largest creditor, and has settled with the MH Parties. Further, Debtor has obtained exit financing from NXT sufficient to ensure that it will be able to remain a viable operating partnership, ready and able to pay its creditors in full all amounts due and owing immediately upon exit from bankruptcy. Indeed, all pre-petition creditors are protected by the terms of the NXT Financing which requires Debtor to pay its creditors in full within thirty (30) days of exiting bankruptcy. Thus, under these circumstances, dismissal of this Case is both warranted and appropriate.

38. Furthermore, Debtor's liquidity is enhanced by a rapid dismissal rather than a lengthy, expensive confirmation process. Not only does Debtor save the cost of promulgating a

plan and disclosure statement, but also, its interest rate with NXT is immediately lowered, and it avoids incurring a higher exit fee with NXT. These savings inure to the benefit of all stakeholders.

39. Whereas the protections of the Bankruptcy Code were vital to Debtor previously, as shown above, it is no longer in the best interests of Debtor to stay in bankruptcy. "Where, as here, a debtor no longer requires the protection of the Bankruptcy Code and the bankruptcy Court, such Debtor has established cause for dismissing the bankruptcy case." *Forum Health*, 444 B.R. at 856.

## NOTICE

40. Notice of this Motion has been served on (i) the Office of the United States Trustee, (ii) all creditors on Debtor's matrix, (iii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002, and (iv) counsel to NXT. Debtor submits that, under the circumstances, no other or further notice is necessary.

## NO PRIOR REQUEST

41. Debtor has not previously sought the relief requested herein from this or any other Court.

[Balance of this page intentionally left blank]

## **CONCLUSION**

**WHEREFORE,** Debtor respectfully requests that this Court: (i) enter an order, granting the relief requested herein and (ii) grant such other and further relief as may be just and proper.

Dated: New York, New York
August 1, 2011

                                            Respectfully submitted,

                                            SQUIRE, SANDERS & DEMPSEY (US) LLP

                                            By: /s/Sandra E. Mayerson
                                               Sandra E. Mayerson (SEM-8119)
                                               Peter A. Zisser (PZ-9634)
                                            30 Rockefeller Plaza
                                            New York, NY 10112
                                            Telephone: (212) 872-9800
                                            Facsimile: (212) 872-9815
                                            Email: sandy.mayerson@ssd.com
                                            Email: peter.zisser@ssd.com

                                            COUNSEL TO DEBTOR AND
                                            DEBTOR-IN-POSSESSION